## PAYNE *v.* BOWDRIE.

1. Where one as trustee under a will was chargeable with funds to be held for the benefit of one for life, with remainder over to her children, if any, and if not, to other designated persons, and in an equitable proceeding to which both he and the cestui que trust were parties it was decreed that he pay the entire fund held by him as trustee directly to the cestui que trust in her own absolute right, such decree was binding upon the trustee, and made it his duty as such to settle with the cestui que trust. This is so although the decree purported to cut off the rights of contingent remaindermen. This might have been a reason for not rendering the decree, but it was nevertheless binding if actually rendered.

2. The trustee is also finally concluded by any other adjudications embraced in such decree, in so far as the decree was based upon and warranted by the pleadings.

3. While, under such a decree, it is incumbent on the trustee to settle at once with the cestui que trust, until he does so and takes an acquittance from the latter his relation to the cestui que trust continues to be that of trustee, and the statute of limitations applicable in such a case is that which the law provides as to suits against trustees, to wit, the limitation of ten years.

4. Until final settlement the relation of trustee continues, and the liability of the trustee applies as to any collections made by the trustee for the benefit of the cestui que trust, even after the rendition of such a decree as that above indicated.

5. The statute of limitations is, under the Civil Code, § 3783, suspended as to a debtor who removes from the State, and does not run in his favor until his return to the State to reside therein.

6. In making a final settlement between a cestui que trust and a trustee, the rule for computing interest is that laid down in the Civil Code, § 3498, to wit: the trustee should, except as otherwise provided by the statute, be charged with seven per cent. per annum, without compounding, for six years from the date of his qualification, and with compound interest at six per cent. thereafter.

7. In the light of the rulings above announced, the court committed no error in admitting testimony or in construing the decree which was introduced in evidence, or in adjudging that the defendant was not protected by the statute of limitations, or, in directing against him a verdict for the two amounts specified, with interest thereon computed in the manner above stated.

Argued March 15, — Decided April 10, 1900.

Action for accounting.   Before Judge Fite.   Catoosa superior court.   February term, 1899.

*Shumate & Maddox* and *Payne & Payne,* for plaintiff in error.   *R. J. & J. McCamy* and *Jones & Martin,* contra.

LEWIS, J.   This was an action brought in Catoosa superior court by Susan C. Bowdrie against W. H. Payne and G. W. Thomas, as trustees for the plaintiff in the suit.   Briefly stated, the petition alleged, that certain sums of money had been received by the defendants as trustees of petitioner, and that they had failed to pay over the same to her, which they were authorized and required to do by virtue of a decree of the superior court of Catoosa county in the year 1885, upon a suit brought by her against W. H. Payne, and her other brothers and sisters, who were, under the will of her father, Thomas J. Payne, to have the trust fund in case of petitioner's death without issue; she alleging in said action that all her brothers and sisters had released to her their contingent interest in said fund, and that W. H. Payne was willing that the same be paid to her in case it could be done under the releases aforesaid.   The defendants in that case were duly served, and, upon hearing the evidence, the chancellor decreed, in effect, that the contingent interest should be vested absolutely in petitioner.   The petition in the present case further alleged that it was claimed by the defendant Thomas that he had resigned from his trusteeship in the year 1883, and settled for all the funds he had received as trustee with his cotrustee Payne; and that, whether or not this was true, it was the duty of Payne to force a settlement with Thomas, and in either event he was liable for the amount in Thomas's hands. To this petition W. H. Payne filed a demurrer on the ground that the petition shows upon its face plaintiff's cause of action, if she ever had any, is barred by the statute, fourteen years hav-

ing elapsed since the alleged cause of action accrued. He admits receiving $175.00, as charged in the petition; that he still holds the same, and, although plaintiff's right of action is barred by the statute of limitations, he is willing to pay her said sum with accrued interest. He denies the resignation of Thomas, and denies that Thomas ever settled with him for any funds he had in his hands. He also pleads the statute of limitations, and denies his liability for any funds that ever came into the hands of Thomas, as trustee.

The record substantially discloses the following facts: Thomas J. Payne died leaving a will, appointing W. H. Payne and G. W. Thomas his executors, and directing that, after collecting all debts and demands due testator, and after paying his wife a certain sum, the remainder should be divided equally among his children, to wit, W. H. Payne, A. J. Payne, Arthur Payne, M. V. Ward, Mary F. Thomas, and Susan C. Bowdrie. He also in the will directed that certain land be sold as soon as the interest of his wife therein terminated under a deed to her, and that the proceeds be divided in the same way as the money above mentioned. The will stipulated, as to the bequests made to Susan C. Bowdrie, that her interest in the property was subject to the restrictions and limitations named as follows: " to be held by my executors in trust and by them loaned out, and the interest arising therefrom be paid her, it being my desire that this fund be held by them for her use and benefit, and that her present husband or any of his relations shall never have any interest in or control of said funds; and in the event that the said Susan C. Bowdrie should die without children in life, then the amount hereby willed to her in this fund be, by my executors, equally divided among my other children then in life, or their children then in life." The following receipt was read in evidence by plaintiff's counsel:

" $306.09-100. Received of G. W. Thomas, trustee for Susan C. Bowdrie, on note for $273.87-100 on W. E. Johnston and J. H. Johnston, principals, and A. T. Hackett, security, dated March 25th, 1879, payable to G. W. Thomas and W. H. Payne, trustee for Susan C. Bowdrie, interest paid on same for two years, also the sum of $32.22-100 cash, funds of said trusteeship,

turned over to me as sole trustee by said Thomas, former co-trustee.   This December 10, 1883.

[Signed] W. H. Payne, Trustee for Susan C. Bowdrie."

There was also introduced in evidence by plaintiff the bill above referred to, filed by Susan C. Bowdrie against A. J. Payne, Arthur Payne, Mary F. Thomas, M. V. Ward, and W. H. Payne, in Catoosa superior court, on July 19, 1884.   This bill brought by Mrs. Bowdrie set forth the will of Thomas J. Payne; admitted that the property therein given to oratrix was limited to a life-estate, with remainder to her brothers and sisters, should she die leaving no children surviving her; and alleged that all her brothers and sisters, except W. H. Payne, had conveyed to her all their contingent interest in the property devised to her, and that W. H. Payne had expressed himself willing to assign his contingent interest therein.   Copies of the assignments or transfers were attached to the bill.   The bill also alleged that G. W. Thomas, one of the trustees named in the will to hold the portion of the estate given to her, had resigned his trust, and that the trust fund had been turned over to the other trustee, W. H. Payne.   It was insisted that, under the laws of Georgia, she was entitled to receive all the trust fund, with the permission of said W. H. Payne, and, if he declined to consent, at least four fifths of the fund.   W. H. Payne was willing to turn the fund over to oratrix if he was allowed, under the law, to do so, but desired the decision of the court whether, under the facts and law applicable thereto, he would be safe in so doing.   Service of this bill was acknowledged by all the parties named, including W. H. Payne. The following decree was rendered thereon:   " The foregoing bill having been duly served and the allegations therein being admitted to be true, and the trustee W. H. Payne, who also has a remainder interest in the property devised, expressing his willingness to relinquish his contingent interest, it is therefore decreed that the said W. H. Payne, after deducting such amount as may be necessary to pay any cost to the ordinary for dismission as trustee, and his commission as trustee should he claim any, that he pay over to complainant, and her receipt shall be an acquittal to him, and the complainant pay the cost of this bill. February term, 1885.    [Signed] J. C. Fain, J. S. C. C. C. "

Payne testified in his own behalf in the case at bar, that, while he admitted giving Thomas the receipt above copied, he did not receive the note and cash therein mentioned, and never had received any funds from Thomas. He admitted receiving the $175.00 in 1891 as Mrs. Bowdrie's distributive share in the sale of certain lands. Thomas swore positively that he did turn over the note and cash mentioned in the receipt to Payne. Hackett, the security on the note, testified that he paid the amount due thereon to Payne; that he first went to Thomas to pay him, but Thomas refused to receive it, because he intended to resign as trustee and turn the whole matter over to Payne. Hackett admitted that he once told Payne that he did not pay him this fund, but afterwards, upon his recollection being refreshed, he was positive in his testimony that he had paid it to Payne. A joint annual return made by W. H. Payne and G. W. Thomas as executors of T. J. Payne, deceased, to the ordinary in 1891, was introduced in evidence, showing, among other things, " $175 for S. C. Bowdrie to be held for further consideration and direction." The original return was in the handwriting of W. H. Payne, and one item was "by amount received as trustee of Susan C. Bowdrie." This item was erased, and the words first above quoted inserted. Counsel for defendant Thomas introduced a return made by him as trustee for Susan C. Bowdrie to the ordinary of Catoosa county on December 10, 1883, showing the note on W. E. and J. H. Johnston, principals, and A. T. Hackett, security, dated March 25, 1879, payable to W. H. Payne and G. W. Thomas, trustees for Susan C. Bowdrie, for $273.87; also the receipt of W. H. Payne for said note and $32-.22 cash as a voucher. Thomas insisted in his testimony that he had resigned, and turned over all the assets held in trust for Mrs. Bowdrie to Payne as trustee; that he employed counsel to obtain this resignation; but there was a failure to show any record of such resignation or discharge in any court, save the decree of the chancellor rendered in 1885, as above set out. The uncontradicted testimony showed that W. H. Payne moved from Catoosa county, Georgia, to Chattanooga, Tennessee, on April 27, 1889, and has lived there continuously since that date.

After the introduction of the evidence by all the parties, the

portions material to the issues in this case being above set out, pending the concluding argument of counsel for plaintiff the court below stopped the argument and announced that he held the proceedings introduced by the plaintiff as evidence in the suit brought by her against W. H. Payne and others, in Catoosa superior court, in July, 1884, were conclusive upon the following points: (1) that Thomas had resigned, or had been discharged from the trusteeship; (2) that all the assets that came into the hands of Thomas as trustee for Susan C. Bowdrie, the plaintiff, were turned over by said Thomas to his cotrustee W. H. Payne, and that by said proceedings the defendant Payne was estopped from denying that Thomas had resigned, and that said Payne had received all of the assets that were in the hands of Thomas as trustee of the plaintiff. The court further announced that he held that Payne was not protected by the statute of limitations, and that he was liable for the $175.00 received by him in April, 1891, with interest thereon, and also liable for the amount of the note specified in the receipt which had been read in evidence by the plaintiff's counsel, and interest thereon, and that the court would direct a verdict against the said Payne for the said two amounts, with interest thereon at the rate of seven per cent. per annum for six years, on all funds that were in his hands at the date of the decree rendered in the suit brought by the plaintiff against W. H. Payne et al., and on all funds that came into his hands subsequently to the date of this decree, at the rate of seven per cent. per annum for the first six years without compounding, and at the rate of six per cent. per annum after the first six years, compounded annually. The court directed the jury to return a verdict in accordance with such holding and instructions, and a verdict was accordingly rendered. This case was brought here by direct bill of exceptions, alleging error in the action of the court above set out.

1, 2. Counsel for plaintiff in error contend that the court erred in admitting in evidence at all the record of the proceeding in the case of Mrs. Susan C. Bowdrie against W. H. Payne and others, under which a decree was taken at the February term, 1885, and that the court also erred in its rulings as to the

effect of that decree. The grounds of objection were as follows: (1) Because said petition shows that the suit was not between the same parties as the suit now on trial; (2) Because G. W. Thomas, one of the defendants to the suit now on trial, was not a party to the suit the record of which is offered in evidence; (3) Because the decree rendered in said case does. not specify any amount as due from defendants in said suit, or either of them, to the plaintiff, nor does it specify what choses in action or other assets are in the hands of the defendants, or either of them; (4) Because the petition in the suit tendered in evidence does not set out any specific amount claimed against the defendant. We do not think that any one of the grounds of objections is well taken. The fact that the former suit of Mrs. Bowdrie did not include all of the parties to the present case can not possibly affect the validity of the decree as to those who were parties in the original case. No question is presented that the court did not have jurisdiction of the persons and subject-matter in that case, and no question is. made that the adjudications in the final decree were not based upon and warranted by the pleadings. The same plaintiff in that suit was the plaintiff below in the present action. One of the parties defendant, and it appears from the record that he was the main and principal party defendant, was W. H. Payne, who is the principal party defendant in this case. That bill was filed, not for the purpose of establishing any particular amount, or obtaining a judgment for any particular sum, with which the defendant Payne might have been chargeable as trustee. It was a proceeding in equity, the sole purpose of which was to obtain a decree empowering Payne, the trustee, to turn over whatever trust funds with which he might be chargeable to the complainant. It alleged all the brothers and sisters having a contingent interest in this fund had conveyed their respective interests to the complainant, except W. H. Payne, and that he was willing to assign his contingent interest therein. These assignments by the others were shown in evidence on the trial. The bill further alleged that G. W. Thomas had resigned his trust, that his resignation had been accepted, and that the trust fund had been turned over to the other trustee, W. H..

Payne. The complainant insisted that, under the laws of the State, she was entitled to receive the trust fund with the permission of said W. H. Payne. The decree recited the fact that the bill had been duly served, that its allegations were admitted to be true, that W. H. Payne, who had a remainder interest in the property devised, had expressed his willingness to relinquish his contingent interest; and it was therefore decreed that, after deducting the costs for his dismissal as trustee, etc., he pay over the balance to complainant, and that her receipt would be an acquittal to him. Of course, the decree does not undertake to fix any amount against the trustee; and we think, if it did so, such a portion of it would have been void, for the reason that the pleadings did not authorize it, nor pray for any such adjudication. This record was not, therefore, introduced for the purpose of establishing the liability of the defendant in any particular amount, but solely to show that Payne had become the sole trustee of the estate, and that it authorized him to settle with the cestui que trust, the complainant in that case. The principle of law controlling this question is so well settled by the Code of Georgia as to amount to an absolute demonstration that the ruling of the court in admitting this record, and his conclusions with reference to the effect of this decree, were sound. Section 3741 of the Civil Code declares: "An adjudication of the same subject-matter in issue in a former suit between the same parties, by a court of competent jurisdiction, should be an end of litigation." Section 5233 declares: "A judgment is admissible between any parties to show the fact of the rendition thereof; between parties and privies it is conclusive as to the matter directly in issue, until reversed or set aside." Section 5348 declares: "The judgment of a court of competent jurisdiction is conclusive between parties and privies, as to the facts which it decides, until reversed or set aside." In the case of *Claflin* v. *De Vaughn*, 106 *Ga.* 282, the principle is declared that a decree in equity is conclusive upon the parties to the case on all questions raised, or which could have been raised, relating to the property to be affected by the decree. There is nothing in the contention of counsel for plaintiff in error that the decree purports to cut off the rights

of contingent remaindermen who were not parties to the action. It is contended, for instance, that if one of the brothers or sisters should die before the death of the life-tenant and leave children surviving, such children would be entitled to an interest in remainder. This might have constituted a reason for not rendering the decree, but this does not prevent the decree from being actually binding on all the parties to the case who were properly before the court. Our conclusion, therefore, is that the ruling of the court below, construing this decree and determining its legal effect, was entirely in accord with the well-established principles of law.

3. Under this decree, it was incumbent on the trustee to settle at once with the cestui que trust; but it does not follow from this that the contention of counsel for plaintiff in error is correct, that the effect of the decree was to end the relation of the parties to each other as trustee and cestui que trust. Nor is there anything in the contention of counsel, that the plaintiff in error, under the will, does not occupy the position of trustee toward the defendant in error, as she was sui juris, and was entitled under the will only to the interest on the property, or its proceeds, devised for her benefit, and that, therefore, the executors named in the will were only trustees for the remaindermen. This was clearly an executory trust. The beneficiaries thereof were not only contingent remaindermen provided for, but also Mrs. Bowdrie, who had an interest in the property or its proceeds for life. She was not, under strict law, entitled to the corpus of the fund, on account of the contingent remainders created, but it was manifestly the duty of the trustee not only to retain the corpus for the protection of such remaindermen, but also to manage it in such a way as to realize interest therefrom to be paid to the life-beneficiary. Now this relation of trustee and cestui que trust continues until the trustee effects a final settlement with the beneficiary. This he was authorized and required to do under the decree; but until this is done, he still occupies the position of trustee. He has never been discharged from this trust. He has never had any settlement with the beneficiary; and in a suit against him for such a settlement, it is necessarily an action against him as trustee. He therefore

does not occupy the position of an individual indebted upon an open account which is barred in a period of four years after the right of action accrues; but the statute of limitations applicable to the case is embodied in the Civil Code, § 3772, which declares that all actions against executors, administrators, guardians, or trustees, except on their bonds, can be brought within ten years after the right of action accrues.

4. Until such final settlement is had between the trustee and beneficiary, the relation of trustee continues, and, of course, the liability of a trustee applies to any collections made by him for the benefit of the cestui que trust, even after the rendition of a decree by a court requiring a final settlement of the trust estate. Therefore the money collected by this defendant, Payne, in 1891 was received by him as trustee. Under the record, however, in this case, this is a question of no importance in so far as the result of this trial is concerned, because the defendant admits collecting this money, and expressly declines to defend against its recovery.

5. It is claimed that this right of action accrued when the decree was rendered, and that about fourteen years had elapsed between that time and the bringing of this suit. It appears, however, from the evidence that in 1889 the defendant left the State of Georgia and moved to the State of Tennessee, where he has been living ever since. The Civil Code, § 3783, declares: " If the defendant, in any of the cases herein named, shall remove from this State, the time of his absence from the State, and until he returns to reside, shall not be counted or estimated in his favor." Clearly then, under this statute and the undisputed evidence in the case, the bar of ten years had not attached, and the court was right in holding that the claim had not been barred by the statute of limitations.

6. Exception is also taken to the ruling of the court upon the subject of interest chargeable against the defendant. By comparing the ruling above set forth with the statute embodied in the Civil Code, § 3498, it will be seen that his conclusions were exactly in accord therewith, and no reason is urged why that section is not applicable to this case.

7. The verdict in this case was only against the defendant

Payne, as the jury found a verdict for the defendant Thomas.
No exception was filed to this finding as to Thomas, and there-
fore the record, in so far as it bears upon his liability or want
of liability, is not considered in this opinion.. In the light of
the rulings above announced, the judge committed no error in
admitting testimony, in his construction of the decree, in his
judgment that the defendant was not protected by the statute
of limitations, or in directing against him a verdict for the two
amounts specified, with interest computed thereon as required
by the statute.

<em>Judgment affirmed. All the Justices concurring.</em> ·